Mary L. Hanback v. Commissioner.
Hanback v. Commissioner
Docket No. 19492.
United States Tax Court
1950 Tax Ct. Memo LEXIS 115; 9 T.C.M. (CCH) 742; T.C.M. (RIA) 50216; August 30, 1950
*115 Held: All the facts show that petitioner and her husband intended to form a partnership for the present conduct of their business during the taxable years in question. Elmer B. Hodges, Esq., Bryant Bldg., Kansas City, Mo., and Clarence H. Dicus, Esq., for the petitioner. Marvin E. Hagen, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion Respondent determined deficiencies in petitioner's income tax liability as follows: Year
Deficiency
1944
$2,167.21
1945
2,386.09
The petitioner claims an overpayment for 1945. Certain adjustments made by the respondent are not in issue. The only question before us is whether respondent erred in determining that petitioner's husband was not her partner for the purpose of conducting the business involved during the taxable years 1944 and 1945. Findings of Fact Petitioner is an individual residing at 5237 Canterbury Road, Kansas City, Kansas. She filed her income tax returns for the calendar years 1944 and 1945 with the collector of internal revenue for the district of Kansas at Wichita, Kansas. In 1937 petitioner's husband, John P. Hanback, was employed by Schooley Printing *116 & Stationery Company of Kansas City, Missouri, hereinafter referred to as Schooley, as production manager. He subsequently became a salesman of printing and lithographing contracts and stationery and office supplies for Schooley. John was successful in obtaining a number of large accounts. From 1937 until 1944 he had approximately 10 accounts. The commissions from these accounts averaged around $20,000 per year. These commissions were paid to John directly by Schooley and from such commissions were withheld income and Social Security taxes. The sales of printing and lithographing contracts constituted the greatest part of John's business. His work with the accounts included making up the material to be printed, doing the art work and handling the mechanical details of each job. One of John's largest regular customers was Beta Sigma Phi, a girls' sorority which published a monthly magazine called "Torch of Beta Sigma Phi." Schooley supplied substantially all of the printing was run off on the company's presses. On or about March 1, 1944, John received a commission in the United States Navy and was ordered to active duty at Philadelphia, Pennsylvania. Before John entered *117 military service he knew he was going to be stationed somewhere in the United States. He was concerned about what would happen to his business when he was in the service. He had an offer from another salesman working with Schooley to service his accounts on the basis of a 50-50 division of the commissions. John, however, did not agree to this. Instead he talked over with petitioner the proposition of their entering into a partnership arrangement whereby she would solicit and service his accounts. It was agreed that he would help her in carrying out this work from time to time. It was anticipated that this would be done by correspondence, telephone and when he came home on leave. John discussed this proposed arrangement with his clients and Schooley and it was agreeable to all of them. He took petitioner around to his customers and introduced her to them. An instrument designated "Articles of Co-Partnership" was signed by petitioner and John on or about March 1, 1944. That agreement is incorporated herein by this reference. It provided that petitioner agreed to service John's accounts as a saleswoman for Schooley. The parties agreed to become co-partners in the business of securing *118 orders for stationery, printing and office supplies for Schooley under the firm name of Hanback & Hanback. The agreement provided that all gains, profits and compensation received by either of them after deducting all business expenses should be divided two-thirds to petitioner and one-third to John as long as he was in the Navy. The terms of that agreement were carried out. Petitioner and John had two daughters in 1944 about two and eight years of age, respectively. On or about March 1, 1944, Schooley employed petitioner to take over John's work. The company made substantially the same employment arrangement with petitioner as it had with John. The commission payments were made by check payable to petitioner and deposited by her in a joint bank account of petitioner and John. No partnership bank account of Hanback & Hanback existed until 1946, which year is not involved in this proceeding. Income and Social Security taxes were withheld by Schooley from her earned commissions. In her income tax return for the calendar year 1945 petitioner describes her occupation as "saleswoman". Schooley furnished the samples of printing and stationery which she displayed to customers. All stationery *119 and printing were billed directly to customers by Schooley and the customers paid the company. Neither John nor the petitioner contributed any capital to the partnership. The partnership did not have any office furniture, telephone, bank account or any assets whatsoever. John was a commissioned officer in the Navy stationed at Philadelphia throughout the entire period of his service from March 1, 1944 to March 15, 1946. During this time he received two military leaves of 12 days each and one 48-hour leave. This leave time was spent calling on customers of Schooley, discussing problems connected with the business with petitioner, and visiting with his family. On many occasions during his service he called petitioner from Philadelphia concerning business problems. At other times petitioner called him seeking advice and counsel in connection with business problems. On one occasion petitioner visited Philadelphia to consult with John about business, as well as to see him for personal reasons. Sometime before July 1945 the business manager of Beta Sigma Phi which published the magazine "Torch of Beta Sigma Phi" indicated his dissatisfaction with the layout and art work. He suggested *120 to petitioner that this business might be taken to another concern. Petitioner called John in Philadelphia about this matter. He obtained special leave to come home to try and save the account. John then decided to take over the details connected with printing of the magazine. In July 1945 the material of this magazine was sent to Philadelphia where it was handled through independent printers. John arranged for the services of a commercial artist to aid him in the layout and art work. After the magazine was assembled by the independent printers, it was sent back to Kansas City, Missouri, where it was run off on the presses of Schooley. He was successful in producing an issue in October which received special commendation from the customer. These efforts by John saved this account. Prior to the time petitioner entered into the co-partnership of Hanback & Hanback she had no experience in the printing business. The partnership returns of income filed for the partnership were for the fiscal years ended February 28, 1945, and February 28, 1946. During the period from March 1, 1944, to February 28, 1945 the commissions received from Schooley amounted to $9,701.66 and during the period *121 from March 1, 1945, to February 28, 1946, such commissions amounted to $14,623.59. It is agreed that if it be held that a partnership existed between petitioner and her husband, as contended by petitioner, that the net income of the partnership for its fiscal year ended February 28, 1945, was $8,501. Since the partnership of Hanback & Hanback filed its return of income and kept its records on the basis of a fiscal year ending February 28 of each year, none of the income involved is includible as income of petitioner for the calendar year 1944, and for the calendar year 1945 there is includible in the income of petitioner her proportionate part of the net income of the partnership for the fiscal year ending February 28, 1945, amounting to $5,667.33 (two-thirds of $8,501). Petitioner received no income from Schooley during the years 1944 and 1945 other than her distributive share of the income of Hanback & Hanback. Petitioner and her husband, John, intended to and did enter into a bona fide partnership for the present conduct of the business in question during the partnership fiscal years ended February 28, 1945 and February 28, 1946. Opinion HILL, Judge: This case involves *122 a different situation from the one usually found in the much litigated question of whether members of the same family may form a partnership recognizable for tax purposes. Here the respondent seeks to tax to petitioner during the years involved all the income from a business founded and built by her husband, John, and carried on by their joint efforts from and after March 1, 1944, through the taxable years here involved. We do not agree, in the circumstances of this case, that respondent's determination is correct. The Supreme Court in , stated that in partnership cases the basic question is "* * * whether, considering all the facts - the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent - the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise." (Italics supplied) All *123 of the facts here point to the ultimate conclusion that petitioner and John acting in good faith and with a business purpose intended to join together as partners in the present conduct of the business in question. There was, first of all, a written agreement between the partners. The provisions of that agreement were carried out during the years before us. Moreover, it is clear that John contributed vital services during 1944 and 1945. The business manager of Beta Sigma Phi, one of the largest accounts of the business, testified that sometime around July 1945 he became dissatisfied with the way in which petitioner had been handling the work connected with the publication of the sorority's monthly magazine. This dissatisfaction was so great that he threatened to give this account to someone else. John then came home on special leave to see if he could iron out the difficulties. He was successful in doing so and after that time actively took over the details connected with the publication of the magazine. His actions saved this particular account. Altogether he made three trips to Kansas City for the purpose of discussing problems connected with the partnership business. On numerous *124 other occasions John and petitioner communicated by telephone in connection with questions concerning its activities. In addition, we think, it is obvious from the evidence that John had a substantial voice in the management and control of the partnership business. It was decided by him that he should take a more active role in the publication of "The Torch." He also shared in other management decisions which came up from time to time. Indeed, we feel in view of petitioner's inexperience in a business of this type, unless John had assisted in the solution of some of the problems which arose in connection with servicing the accounts in question, that the business would not have been as successful as it was during 1944 and 1945. It is thus apparent, contrary to respondent's contention, that commissions paid by Schooley were not produced solely by the personal efforts of petitioner alone. Instead they were earned by the combined efforts of petitioner and John operating the business as partners. The cases cited by respondent are distinguishable. It follows that respondent erred in his determination. Decision will be entered under Rule 50.